IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| URETEKNOLOGIA DE MEXICO S.A. | § | |
| DE C.V., et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-16-2762 |
| | § | |
| URETEK (USA), Inc., et al., | § | |
| | § | |
| Defendants. | § | |

## <u>MEMORANDUM OPINION</u>

Pending before the court[1] are: (1) Defendants Galen Howard ("Galen"), Mindy Howard ("Mindy") (also collectively, "the Howards"), and Structural Plastics, Inc.'s ("SPI") Motion to Exclude Testimony of Bruce Blacker ("Blacker") (Doc. 54); (2) Defendant Galen's Motion for Summary Judgment (Doc. 52); (3) Defendant SPI's Motion for Summary Judgment (Doc. 53); (4) Defendant Mindy's Motion for Summary Judgment (Doc. 55); (5) Brent J. Barron ("Barron") and Randall Wayne Brown's ("Brown") No-Evidence Motion for Summary Judgment (Doc. 62); and (6) Defendants Galen, Mindy, and SPI's (collectively, "SPI Defendants") Motion to Strike Plaintiffs' Surreply to SPI Defendants' Combined Reply in Support of Their Motions (Doc. 72).

The court has considered the motions, the responses, all other relevant briefing, the competent summary judgment evidence, and the

---

[1] The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. <u>See</u> Doc. 40, Ord. Dated May 15, 2017.

applicable law.  For the reasons set forth below, the court **GRANTS IN PART AND DENIES IN PART** Defendants' motion to exclude, **GRANTS** Defendant Galen's motion, **GRANTS** Defendant SPI's motion, **GRANTS** Defendant Mindy's motion, **GRANTS IN PART AND DENIES IN PART** Defendants Barron and Brown's motion.  The court **DENIES** the motion to strike Plaintiffs' surreply to SPI Defendants' summary judgment reply.

## I.  Case Background

Plaintiffs, both Mexican corporate entities, filed this contract and tort action against Defendants, alleging that SPI Defendants entered a scheme with Defendants Uretek (USA), Inc., ("Uretek"), Barron, president of Defendant Uretek, and Brown, vice president of Defendant Uretek, (collectively, "Uretek Defendants") to use SPI as a conduit to "circumvent, breach, interfere with and/or baldly disregard the terms" of a 2003 sublicense agreement ("Sublicense") as modified in May and June 2010 and a 2010 confidentiality non-circumvention, and non-disclosure agreement ("NDA").[2]

## A.  <u>Parties' Joint Description</u>

This section is directly quoted (with modifications as indicated therein) from the parties' joint description of the case that they provided in their December 2016 Joint Discovery/Case

---

[2]     Doc. 1, Pls.' Orig. Compl. p. 3; <u>see also</u> <u>id.</u> p. 4.

2

Management Plan.

[The Sublicense] between Plaintiff Ureteknolgia S.A. de C.V. ("UdeM") and Uretek . . . grants UdeM certain rights to utilize certain products and methodologies owned by Uretek in the Country of Mexico and, as long as the agreement is in place, Uretek is not to compete with UdeM. UdeM, with Uretek's consent assigned certain rights under the Sublicense to Urelift S.A. de C.V. [("Urelift")]. Subsequently, an amendment of the Sublicense to which UdeM and Uretek were parties became effective.

Plaintiffs contend that Uretek has circumvented the exclusivity provisions of the Sublicense . . . and of [the NDA] executed by Uretek and [D]efendant [Barron]. In response, Uretek and Barron contend (i) Uretek is not competing with UdeM or Urelift in Mexico, (ii) the [NDA] was not executed personally by Barron, and (iii) Uretek has not made unauthorized disclosures.

Plaintiffs also contend that Uretek is selling polymers and equipment needed for the processes subject to the Sublicense . . . to a company, [SPI, belonging] to Barron's daughter, [Mindy,] and her husband [Galen]. SPI, in turn, is allegedly selling polymers and equipment to a competitor of Plaintiffs in Mexico. SPI, the Howards and Uretek respond that Uretek is free to sell to SPI in the United States and that SPI is not bound by the Sublicense . . . .

Plaintiffs also contend that [Brown] is an officer of Uretek and has contracted with ALSO [Construccion y Supervision S.A. de C.V. ("ALSO")] to provide services to ALSO in the Country of Mexico on projects for which ALSO seeks to compete with Plaintiffs for the providing of products, services, and methodology that is governed by the Sublicense . . . . Brown responds that he is not bound by the Sublicense . . . individually and, as an engineer with a [Ph.D.], is free to consult with any person or entity absent objection by Uretek. Brown also responds that he has provided no services to any competitor of Plaintiffs.

In addition, Defendants contend (i) that Plaintiffs do not have the capital to perform major projects, (ii) that failed projects have tarnished Plaintiffs' reputation in Mexico, and (iii) that Plaintiffs use an

inferior polymer that makes them uncompetitive. Finally, Uretek contends that it never consented to the assignment of the amendments to the Sublicense . . . to Urelift.

Uretek has also filed a counterclaim contending that Plaintiffs are misrepresenting to clients in Mexico that Plaintiffs are utilizing and will utilize polymers provided by Uretek for their projects in Mexico. Uretek contends that Plaintiffs have purchased no polymers from Uretek for a number of years. In its counterclaim, Uretek contends that the use of inferior polymers that Plaintiffs claim to have sourced from Uretek damages Uretek's reputation.[3]

## B.   **Competent Summary Judgment Evidence**[4]

On March 24, 2003, Defendant Uretek and Plaintiff UdeM executed the Sublicense whereby Defendant Uretek granted Plaintiff UdeM "an exclusive sublicense to provide and distribute services" using the Uretek processes and products within the field of use in Mexico.[5] Defendant Uretek further agreed that it would "not engage in any manner in the sale or application of services" using Uretek processes and products in the field of use in Mexico.[6]   In

---

[3]      Doc. 18, Jt. Disc./Case Mgmt. Plan p. 2.

[4]      Multiple objections are pending to summary judgment evidence. These objections are resolved in a later section. Only the evidence that survived those objections is considered competent summary judgment evidence and is cited in this section.

[5]      Doc. 60-1, Ex. 1 to Pls.' Combined Resp. in Opp. to SPI Defs.' Mots. for Summ. J., Sublicense pp. 1, 4; Doc. 71-1, Ex. 1 to Pls.' Resp. in Opp. to Defs. Barron & Brown's No-Evid. Mot. for Summ. J., Sublicense pp. 1, 4. The exhibits upon which the court relies throughout this opinion are attached to both of Plaintiffs' responses to the pending motions for summary judgment with the same exhibit numbers. For convenience sake, the court cites only to Plaintiffs' response to SPI Defendants' motions (Doc. 60), but each exhibit also may be found attached to Plaintiffs' response to Defendants Barron and Brown's motion (Doc. 71).

[6]      Doc. 60-1, Ex. 1 to Pls.' Combined Resp. in Opp. to SPI Defs.' Mots. for Summ. J., Sublicense p. 5.

exchange, Plaintiff UdeM agreed to pay a license fee, other costs, and an additional royalty on projects employing Uretek processes and products.[7]

In January 2010, Defendant Barron entered into a non-disclosure agreement with Plaintiffs, NDT, Inc., Intec Corporation, and ICFS, Inc.[8] Defendant Barron agreed to keep confidential so-called "Evaluation Material" and to safeguard it from disclosure outside the bounds of the NDA.[9] He also agreed not to disclose, without prior written consent, that the information had been made available to him, that he had inspected any portion of it, or that discussions or negotiations regarding a possible transaction or other business relationship with Defendant Barron or any client or entity were being undertaken.[10]

The NDA allowed Defendant Barron to disclose the information to "employees or to other representatives or employees or professionals . . . who need[ed] to know such information for the purpose of evaluating any such possible transaction, business or Joint Venture Agreement" involving the contracting parties.[11] The NDA required those employees and others to agree to keep the

---

[7]     See id. pp. 4-5.

[8]     See Doc. 60-22, Ex. 22 to Pls.' Combined Resp. in Opp. to SPI Defs.' Mots. for Summ. J., NDA.

[9]     See id. p. 1.

[10]    See id.

[11]    Id.

5

information confidential and not to use it for any other purpose than allowed by the NDA.[12] The NDA specifically stated that Defendant Barron would be held responsible for any breach of the agreement by those individuals.[13] Francisco Alvarez ("Alvarez"), Plaintiffs' corporate representative, and Defendant Barron signed the NDA, and Defendant Brown and one other individual witnessed the signatures.[14] Beneath Alvarez's signature line were the words "Francisco J Alvarez For 'COMPANIES,'" and beneath Defendant Barron's signature were the words "BRENT JAMISON BARRON For 'URETEK USA, INC.'"[15]

According to Alvarez, Defendant Brown obtained, in 2009 or 2010, certain engineering information related to "the repair of METRO Line A and for Circuito Exterior Mexiquense. . ., the basis for a new airport" while he was in Mexico with Defendant Barron.[16] Alvarez described the engineering information, which he alleged had been "stolen," as processes and results. In particular, it included "[c]alculations, drawings, geotechnical information, [and] geophysical information."[17] The calculations included the

---

[12] See id.

[13] See id.

[14] See id. p. 2.

[15] Id.

[16] Doc. 60-23, Ex. 23 to Pls.' Combined Resp. in Opp. to SPI Defs.' Mots. for Summ. J., Dep. of Alvarez pp. 87-88 (expressing uncertainty whether the year was 2009 or 2010).

[17] Id. pp. 87, 89.

"California bearing ratio" and "the needed strength and thickness for stabilization of layers for specific jobs."[18]

Alvarez testified that Defendant Brown obtained the information under the protections of the NDA and that he and Uretek shared it with "ALSO and other outfits."[19]  He received information about the sharing of Plaintiffs' engineering information from clients and others in the construction field.[20]  He also learned that Defendant Brown provided engineering services to ALSO in Mexico.[21]

In a letter agreement dated May 18, 2010, Alvarez, on behalf of Plaintiffs, and Defendant Barron, on behalf of Defendant Uretek and Starlift, Inc., "freely agree[d]" to certain "modifications, representations, and covenants" concerning the Sublicense.[22]  The letter referenced a contract that would be signed in June 2010 that would grant NDT, Inc., exclusive rights under the Sublicense in New Mexico and Texas.[23]  The First Amendment to Sublicense Agreement was executed on June 10, 2010.[24]

---

[18]    Id. p. 89.

[19]    Id. pp. 91-92; see also id. pp. 241-43.

[20]    See id. p. 92.

[21]    See id.

[22]    Doc. 60-2, Ex. 2 to Pls.' Combined Resp. in Opp. to SPI Defs.' Mots. for Summ. J., Letter from Pls. & NDT, Inc., to Def. Barron Dated May 18, 2010.

[23]    See id.

[24]    See Doc. 60-3, Ex. 3 to Pls.' Combined Resp. in Opp. to SPI Defs.' Mots. for Summ. J., 1st Am. to Sublicense Agreement.

Defendants Galen and Mindy formed Defendant SPI in September 2010.[25] Since its formation, Defendants Galen and Mindy have been the only directors and executive officers.[26] Defendant Mindy has no active role in the company's operations.[27] SPI Defendants described their actions in relation to the allegations asserted here as being "designed to sell products and not interfer[e] with any contracts."[28] SPI Defendants deny: (1) having knowledge of contracts between Plaintiffs and any entity; (2) willfully or intentionally interfering with any of Plaintiffs' contracts; (3) acquiring or using any of Plaintiffs' trade secrets; or (4) entering any agreement with each other or any Uretek Defendants to accomplish an unlawful act against Plaintiffs.[29]

---

[25]    See Doc. 52-5, Ex. 5 to Def. Galen's Mot. for Summ. J., Decl. of Def. Mindy p. 1; Doc. 52-6, Ex. 6 to Def. Galen's Mot. for Summ. J., Decl. of Def. Galen p. 1; Doc. 52-7, Ex. 7 to Def. Galen's Mot. for Summ. J., Decl. of Def. SPI p. 1. These declarations are also attached as exhibits to Def. SPI's Motion for Summary Judgment (Doc. 53) and Def. Mindy's Motion for Summary Judgment (Doc. 55).

[26]    Doc. 52-5, Ex. 5 to Def. Galen's Mot. for Summ. J., Decl. of Def. Mindy p. 1; Doc. 52-6, Ex. 6 to Def. Galen's Mot. for Summ. J., Decl. of Def. Galen p. 1; Doc. 52-7, Ex. 7 to Def. Galen's Mot. for Summ. J., Decl. of Def. SPI p. 1.

[27]    Doc. 52-5, Ex. 5 to Def. Galen's Mot. for Summ. J., Decl. of Def. Mindy p. 1; Doc. 52-6, Ex. 6 to Def. Galen's Mot. for Summ. J., Decl. of Def. Galen p. 1; Doc. 52-7, Ex. 7 to Def. Galen's Mot. for Summ. J., Decl. of Def. SPI p. 1.

[28]    Doc. 52-5, Ex. 5 to Def. Galen's Mot. for Summ. J., Decl. of Def. Mindy p. 2; Doc. 52-6, Ex. 6 to Def. Galen's Mot. for Summ. J., Decl. of Def. Galen p. 2; Doc. 52-7, Ex. 7 to Def. Galen's Mot. for Summ. J., Decl. of Def. SPI p. 2.

[29]    See Doc. 52-5, Ex. 5 to Def. Galen's Mot. for Summ. J., Decl. of Def. Mindy p. 2; Doc. 52-6, Ex. 6 to Def. Galen's Mot. for Summ. J., Decl. of Def. Galen p. 2; Doc. 52-7, Ex. 7 to Def. Galen's Mot. for Summ. J., Decl. of Def. SPI p. 2.

In an email from Defendant Barron's Uretek address to another Uretek address with the subject "Mexico & Wedding Stuff" dated June 20, 2016, Defendant Barron addressed a project run by POLILIFT, indicating that the project was going well.[30] On June 29, 2016, Defendants Barron and Mindy were recipients of an email directed to them personally that requested a signature on a North American Free Trade Agreement ("NAFTA") certificate for Luis Sosa ("Sosa") of ALSO.[31] Sosa sent another email on which Defendants Barron and Mindy were copied that requested another NAFTA certificate "just in case we need it with Mexican Customs."[32] In other emails that day, Sosa requested Defendant Barron send it "ASAP" and thanked Defendant Barron.[33]

On July 20, 2016, Defendant Barron sent an email to a Uretek address with the subject "SPI Letter."[34] The entire contents of the email was a letter from Defendant Galen to ALSO of the same date that read:

---

[30] Doc. 60-5, Ex. 5 to Pls.' Combined Resp. in Opp. to SPI Defs.' Mots. for Summ. J., Email from Def. Barron to Mike Vinton Dated June 20, 2016.

[31] See Doc. 60-6, Ex. 6 to Pls.' Combined Resp. in Opp. to SPI Defs.' Mots. for Summ. J., Email from Julio Flores to Def. Barron, et al. Dated June 29, 2016.

[32] See Doc. 60-6, Ex. 6 to Pls.' Combined Resp. in Opp. to SPI Defs.' Mots. for Summ. J., Email from Sosa to Julio Flores, et al., Dated June 29, 2016.

[33] See Doc. 60-6, Ex. 6 to Pls.' Combined Resp. in Opp. to SPI Defs.' Mots. for Summ. J., Emails from Sosa to Julio Flores, et al., Dated June 29, 2016.

[34] Doc. 60-8, Ex. 8 to Pls.' Combined Resp. in Opp. to SPI Defs.' Mots. for Summ. J., Email from Def. Barron to ahyde@uretekusa.com Dated July 20, 2016.

As you know[,] we have entered into contract with ALSO to
provide the patented hydro-insensitive polymer components
which we obtain directly from URETEK USA, Inc.

Our working contract began in May of 2014 and continues
to date.

[Defendant SPI] uses this patented product for many other
applications than soils and pavement remediation.  Our
purchasing agreement with URETEK specifically prohibits
use of these polymers within the United States.  Our
applications OUTSIDE the U.S. (including those of ALSO)
make our selling prices quite competitive with many other
specialty materials; BUT none have the chemical formulas
like ours which are so necessary to provide a product
specifically intended for use in wet conditions and wet
soils.  We trust you have found our products to be
satisfactory and we look forward to working with you in
the future.

We are certainly interested in extending our current
agreement with your company.[35]

An email exchange in August 2016 began when Defendant Barron
wrote from his Uretek address to Sosa inquiring about a payment.[36]
Sosa responded on the same day in an email riddled with personal
pleasantries, stating in part:

First t[h]e [g]ood [n]ews, we called you on [F]riday to
let you know that we won the Metro bid, Alvarez did[n't]
even c[o]me to the Resolution Act.  He submitted right
away a complaint, but Metro replied i[m]mediately that he
did[n't] ha[ve] valid arguments in order to support his
complaint.[37]

The email also explained that the "Chapultepec payments" were in

---

[35]     Id.

[36]     See Doc. 60-5, Ex. 5 to Pls.' Combined Resp. in Opp. to SPI Defs.'
Mots. for Summ. J., Email from Def. Barron to Sosa Dated Aug. 1, 2016.

[37]     Doc. 60-5, Ex. 5 to Pls.' Combined Resp. in Opp. to SPI Defs.' Mots.
for Summ. J., Email from Sosa to Def. Barron Dated Aug. 1, 2016.

the "City's finance area" and promised that, as soon as the payments were received, "our first priority and payment is for you, that same day."[38]  Sosa concluded, "Thanks for all your support . . . in this phase of ALSO, you know that without your help we would[n't] be able to be here.  But I know you also understand that with it, we might become one of your biggest suppliers."[39]

On September 12, 2016, Defendant Barron directed Amy Hyde of Defendant Uretek to put a warranty letter to ALSO on SPI letterhead and "give it to me for Galen's 'signature.'"[40]

## C.  Procedural Background

In a prior lawsuit, Defendant Uretek sued Plaintiff UdeM.[41] That case was decided by jury trial in this district that resulted in a final judgment "declaring, among other things, that [the Sublicense], as modified by subsequent agreements, [was] valid and enforceable."[42]  On October 29, 2014, the Fifth Circuit affirmed the final judgment on appeal.[43]

---

[38]    Id.

[39]    Id.

[40]    Doc. 60-11, Ex. 11 to Pls.' Combined Resp. in Opp. to SPI Defs.' Mots. for Summ. J., Email from Def. Barron to Amy Hyde Dated Sept. 12, 2016.

[41]    See Doc. 1, Pls.' Orig. Compl. p. 3; cf. Uretek (USA), Inc. v. Ureteknologia de Mexico S.A. de C.V., Civil Action No. H-11-3060, 2013 WL 3280151 at *1 (S.D. Texas June 27, 2013).

[42]    Doc. 1, Pls.' Orig. Compl. p. 3; see also Doc. 4, Uretek Defs.' Ans. & Def. Uretek's Countercl. p. 3; Doc. 9, SPI Defs.'s Ans. p. 3.

[43]    See Doc. 1, Pls.' Orig. Compl. p. 3; Doc. 4, Uretek Defs.' Ans. & Def. Uretek's Countercl. p. 3; Doc. 9, SPI Defs.'s Ans. p. 3; cf. Uretek (USA), Inc. v. Ureteknologia de Mexico de C.V., 589 F. App'x 710 (5th Cir.

On September 13, 2016, Plaintiffs filed a complaint against SPI and Uretek Defendants, alleging the following causes of action: (1) breach of the Sublicense against Uretek; (2) tortious interference with existing contracts (Sublicense and NDA) against SPI Defendants; (3) tortious interference with prospective business relations against all Defendants; (4) breach of contract (NDA) against Uretek Defendants; (5) trade secret misappropriation against all Defendants; and (6) conspiracy against all Defendants.[44]

SPI and Uretek Defendants filed answers, and Defendant Uretek counterclaimed, asserting that neither Plaintiff UdeM nor Plaintiff Urelift had placed any order with Defendant Uretek in four years and that Plaintiffs misrepresented the source of inferior polymers they were using in failed projects as being Defendant Uretek's products, thereby defaming Defendant Uretek.[45] Defendant Uretek sought: (1) a permanent injunction prohibiting Plaintiffs from misrepresenting the source of the polymers used in their project; (2) a "reasonable royalty for the unlawful use of the good name of [Defendant] Uretek's products in order to market their services[;]" and (3) "exemplary damages for the fraud Plaintiffs have knowingly committed."[46]

---

2014)(unpublished).

[44]    See Doc. 1, Pls.' Orig. Compl. pp. 7-11.

[45]    See Doc. 4, Uretek Defs.' Ans. & Def. Uretek's Countercl.; Doc. 9, SPI Defs.' Ans.

[46]    Doc. 4, Uretek Defs.' Ans. & Def. Uretek's Countercl. pp. 7-8.

On October 17, 2016, Plaintiffs filed a motion to dismiss and motion for more definite statement regarding Defendant Uretek's counterclaim.[47]  In the response, Defendant Uretek clarified that it was not bringing a fraud claim; rather, "The action [was] based on UdeM's misuse of [Defendant] Uretek's good name."[48]  The court denied Plaintiffs' motions to dismiss and for more definite statement.[49]  Pursuant to leave of court, Plaintiffs answered the counterclaim in January 2017.[50]

In May 2017 after the district judge referred the case, the parties consented, and the case was transferred to the undersigned.[51]  In September 2017, Plaintiffs filed their designation of expert witnesses, including Blacker as a damages expert.[52]  In early 2018, the parties filed all of the pending motions and, by the end of March 2018, completed the briefing.[53] All motions are ready for the court's consideration.  On April 4,

---

[47]    See Doc. 15, Pls.' Mot. to Dismiss Def. Uretek's Countercl. & Mot. for More Definite Statement.

[48]    Doc. 16, Def. Uretek's Resp. to Pls.' Mot. to Dismiss Def. Uretek's Countercl. & Mot. for More Definite Statement p. 4.

[49]    See Doc. 17, Ord. Dated Nov. 15, 2016.

[50]    See Doc. 22, Ord. Dated Jan. 4, 2017; Doc. 23, Pls.' Ans. to Def. Uretek's Countercl.

[51]    See Doc. 35, Ord. Dated May 5, 2017, Docs. 37-39, Consents; Doc. 40, Ord. Dated May 15, 2017.

[52]    See Doc. 50, Pls.' Designation of Expert Witnesses pp. 2-3.

[53]    See generally Docs. 52-64, 66-73, Mots., Resps., Replies, Surreplies, Stipulations, Ords.

2018, Defendants filed a motion in limine that will be addressed with other pretrial matters shortly before trial.[54]

## II.   Nondispositive Matters

Defendants filed a joint motion to exclude the testimony of Blacker, Plaintiffs' expert on damages.   SPI Defendants and Defendants Barron and Brown objected to Plaintiffs' summary judgment evidence.   Plaintiffs objected to the Howards' declarations and to Barron and Brown's "no-evidence" summary judgment motions.

## A.   <u>Defendants' Motion to Exclude Expert Testimony</u>

Defendants do not challenge Blacker's qualifications but seek to exclude his expert testimony on the following bases: (1) "all Blacker has done is perform some fourth grade level arithmetic[;]" (2) "he is woefully lacking in his understanding of admitted, undisputed facts[;]" (3) "he has relied almost exclusively on information supplied through conversations with or deposition testimony by [Alvarez];" and (4) "without considering all pertinent data, Blacker cannot possibly apply any principle reliably and one principle he purports to use, 'weighted cost of capital,' is not a recognized measure of damage."[55]

### 1.   Legal Standard

Under the Federal Rules of Evidence and related case law, an

---

[54]    <u>See</u> Doc. 74, Defs.' Mot. in Limine.

[55]    Doc. 54, Defs.' Mot. to Exclude Test. of Blacker p. 2.

expert's testimony must be both relevant and reliable.  <u>Smith v. Goodyear Tire & Rubber Co.</u>, 495 F.3d 224, 227 (5th Cir. 2007); <u>see also</u> Fed. R. Evid. 702 & advisory committee's note, 2000 Amends. To be relevant, the testimony must assist "the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702.  The Federal Rules of Evidence define relevant evidence as that which "has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action."  Fed. R. Evid. 401.

Reliability is the "overarching requirement" and hinges on the sufficiency of the facts or data upon which the opinion is based, the dependability of the principles and methods employed, and the proper application of the principles and methods to the facts of the case.  Fed. R. Evid. 702, advisory committee's note, 2000 Amends.; <u>see also</u> Fed. R. Evid. 702.  The facts upon which an expert's opinion is based may be those of which he was "made aware" or those that he "personally observed."  Fed. R. Evid. 703.  The important characteristic of the facts is that they be of the sort that "experts in the particular field would reasonably rely" in forming an opinion on the subject, not that the facts themselves be admissible.[56]  <u>See</u> <u>id.</u>  "[A]n analysis of the sufficiency of the expert's basis cannot be divorced from the ultimate reliability of

---

[56]     Although an expert may rely on inadmissible facts, the presentation of those facts to the jury depends on whether their probative value substantially outweighs their prejudicial effect.  Fed. R. Evid. 703.

the expert's opinion." Fed. R. Evid. 702, advisory committee's note, 2000 Amends.

An opinion that is based on "insufficient, erroneous information," "completely unsubstantiated factual assertions," or "altered facts and speculation designed to bolster a party's position" is not reliable. Moore v. Int'l Paint, L.L.C., 547 F. App'x 513, 515 (5th Cir. 2013)(unpublished)(quoting Paz v. Brush Engineered Mats., Inc., 555 F.3d 383, 389 (5th Cir. 2009), Hathaway v. Bazany, 507 F.3d 312, 319 n.4 (5th Cir. 2007), and Guillory v. Domtar Indus., 95 F.3d 1320, 1331 (5th Cir. 1996)). On the other hand, the trial court's role is not to replace the adversary system or to turn a reliability analysis into a trial on the merits. Pipitone v. Biomatrix, Inc., 288 F.3d 239, 250 (5th Cir. 2002)(citing Fed. R. Evid. 702, advisory committee's note, 2000 Amends.).

The general rule is that the jury may hear the expert's testimony and decide whether the predicate facts are accurate. Moore, 547 F. App'x at 515 (quoting Pipitone, 288 F.3d at 250). "[Q]uestions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." United States v. 14.38 Acres of Land, More or Less Situated in Leflore Cty., State of Miss., 80 F.3d 1074, 1077 (5th Cir. 1996). "Vigorous cross-examination, presentation of contrary evidence, and

careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Fed. R. Evid. 702, advisory committee's note, 2000 Amends. (quoting Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 596 (1993)).

The burden falls on the party producing the expert to establish, by a preponderance of evidence, the predicate for admissibility of expert testimony. See Fed. R. Evid. 702, advisory committee's note, 2000 Amends.; Mathis v. Exxon Corp., 302 F.3d 448, 459-60 (5th Cir. 2002). The trial court has the responsibility of determining whether the proponent has met its burden. Fed. R. Evid. 104(a). The trial judge has "wide latitude in determining the admissibility of expert testimony[;]" yet, "the rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702, advisory committee's note, 2000 Amends.; Wilson v. Woods, 163 F.3d 935, 936-37 (5th Cir. 1999)(quoting Watkins v. Telsmith, Inc., 121 F.3d 984, 988 (5th Cir. 1997)).

## 2. Blacker's Opinion

In his report, Blacker identified five categories of damages: (1) lost profits due to reduced bids on completed projects; (2) lost profits due to increased costs on completed projects; (3) withheld payments on one completed project; (4) lost projects; and (5) liquidated contractual damages.[57] With regard to the withheld

---

[57] See Doc. 59-1, Ex. A to Pls.' Resp. to Defs.' Mot. to Exclude Test. of Blacker, Blacker's Report pp. 22-31.

payments, Blacker explained his calculation in the following manner:

> The economic harm suffered by Urelift due to the withheld payments can be measured in the form of the lost time value of money associated with these amounts. Specifically, I calculated the potential return that could have been earned on these withheld amounts if the payments had been made in a timely manner. For the purposes of this analysis, I have assumed that the payments should have been made on the end date of the project . . . . The time value of money from the date the payments <u>should</u> have been made to the date the payments are <u>anticipated</u> to be made is based upon the average weighted average cost of capital . . . of construction companies, adjusted by the country risk premium associate with Mexico.[58]

As the factual basis for his report, he referred to a thirty-six-page list of documents, the majority of which were not identified by title or subject.[59] Of those documents, he cites, other than the Sublicense and related agreements, only ten in his report.[60] The vast majority of his information was derived from conversations with Alvarez and/or Alvarez's deposition.[61]

## 2. Discussion of Objections

Defendants' assertion that Blacker's opinion is not helpful because it includes nothing more than fourth-grade calculations is itself nothing more than unnecessary hyperbole. The court's focus

---

[58]    <u>Id.</u> p. 28. In a footnote, Blacker stated that he calculated a weighted average cost of capital of 16.67% based on "a calculated cost of equity of 18.68% and a cost of debt of 7.36%." <u>Id.</u> p. 28 n.110.

[59]    <u>See id.</u> Ex. 3, Facts, Data, Other Information Received.

[60]    <u>See id.</u> pp. 22, 25-30.

[61]    <u>See id.</u> pp. 4, 7, 8, 21-22, 25-27, 29.

is not on the educational level of Blacker's calculations but whether they will assist the jury in determining damages. The court finds that they will.

Defendants' challenge to the factual support for Blacker's report carries more weight. Although Blacker's methods of calculating damages, with one exception discussed below, appear to employ acceptable standards, the court is concerned that Blacker's report is not fully transparent as to the sources of the data on which he relies. Defendants raise a number of points, which Plaintiffs address only on the most general level, that, if proved to be true at trial, may severely limit the availability of expert testimony at trial. That said, many of the specific flaws cited by Defendants can be handled through cross-examination and the presentation of conflicting evidence. Moreover, Blacker's report is not littered with obviously "insufficient, erroneous information," "completely unsubstantiated factual assertions," or "altered facts and speculation." Moore, 547 F. App'x at 515. The court finds that the determination whether the factual basis for Blacker's damage calculations is sufficient is best left for trial, when the court will scrutinize whether a sufficient basis is laid to allowing the jury to consider Blacker's testimony.

If his report citations are accurate, the majority of facts on which he based his opinions were provided to him by Alvarez, either personally or via deposition. This is legally inconsequential for

the admissibility of his testimony because an expert may rely on information provided to him as long as it is the type on which experts in his field would rely. See Fed. R. of Evidence 703. The court finds, assuming the data is correct, that the information on which Blacker's opinions are based is generally considered in calculating damages.

The fourth challenge asserted by Defendants is well taken. Blacker fails to differentiate his calculation of the weighted average cost of capital from prejudgment interest. See F.D.I.C. v. Maxxam, Inc., 523 F.3d 566, 596 n.169 (5th Cir. 2008)(quoting Gore, Inc. v. Glickman, 137 F.3d 863, 868 (5th Cir. 1998), as stating, "[p]rejudgment interest, like any other interest, is to compensate one for the time value of money."). Plaintiffs do not touch the subject in either their response or their surreply, much less explain the difference or cite authority that demonstrates it is a recognized measure of damages. The court finds, under these circumstances, that the weighted average cost of capital is not a reliable measure of damages allegedly suffered by Urelift as a result of the withheld payment discussed in Blacker's report.

**B.  Defendants' Objections to Plaintiffs' Evidence**

The Rules allow parties to object to evidence that "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Defendants' assert a variety of objections to Plaintiffs' evidence. To begin with, the court notes that, in

responses to the motions for summary judgment of the SPI Defendants and Defendants Barron and Brown, Plaintiffs cite significant ranges of exhibits "collectively" for the following general factual findings: (1) SPI was a conduit to allow Uretek to circumvent contracts with Plaintiffs (both responses); (2) SPI was used as a "sham to perpetuate various torts" (response to SPI Defendants); (3) Barron sent emails from his Uretek email address on SPI's behalf (response to SPI Defendants); (4) the Howards were part of the scheme (response to SPI Defendants); (5) SPI Defendants "were not simply conducting business in Mexico;" and/or Barron was cloaked "with apparent authority to conduct business transactions" on SPI's behalf (response to SPI Defendants); (6) Defendant Barron acted beyond his capacity by communicating with ALSO (response to Barron and Brown Defendants); (7) Defendants Barron and Brown interfered with Plaintiffs' current and prospective contractual relations (response to Barron and Brown Defendants).[62] Plaintiffs do not cite exhibits 7, 9-10, 12-20 in any specific way in either of their responses; they also do not cite exhibit 21 specifically in their combined response to SPI Defendants' motions.

Rule 56(c)(3) states that the court need only consider cited evidence. The court finds that Plaintiffs failed to comply with this rule by citing a range of exhibits for the court to scour for

---

[62] Doc. 60, Pls.' Combined Resp. in Opp. to SPI Defs.' Mots. for Summ. J. pp. 11-15; Doc. 71, Pls.' Resp. in Opp. to Defs. Barron & Brown's No-Evid. Mot. for Summ. J. pp. 10, 13, 14.

evidence of their assertions.  The burden is on the nonmovant, not the court, to comb through the evidence and pinpoint exhibits that demonstrate that a genuine dispute of material fact exists.  The court refuses to sift through numerous documents to find a fact issue.

The court makes the following rulings on SPI and Defendants and Barron and Brown's objections to Plaintiffs' summary judgment evidence:[63]

- Exhibit 4 is a word document created by Plaintiffs' attorney to synthesize the modifications and amendments to the Sublicense Agreement to which SPI Defendants object.  It is not evidence, but, rather, is a demonstrative aid on which the court does not rely.  The objection is **SUSTAINED.**

- Exhibits 6, 15, and 21 contain untranslated Spanish text.  SPI Defendants object to these documents on that basis; Defendants Barron and Brown object only to Exhibit 21 on this basis. Documentary evidence in a foreign language must be translated.[64]  See Taniguchi v. Kan Pac. Saipan, Ltd., 566 U.S. 560, 579 (2012)(Ginsburg, dissenting)(stating that the purpose of translation is to make the material accessible).  With two exceptions, the court does not consider any document, notice, letter, or email that contains any untranslated Spanish.  The two exceptions are datelines on emails and the Spanish translation of English on the NAFTA certificate because, in those cases, the Spanish portions are accessible.  Plaintiffs argue that Exhibits 6 and 15 should be admissible despite the untranslated Spanish and should be presumed authentic because

---

[63]     Plaintiffs submitted identical exhibits to SPI Defendants' motions for summary judgment and Defendants Barron and Brown's motion for summary judgment with the exception of exhibit 25 to Plaintiffs' response to Defendants Barron and Brown's motion, which is a duplicate of exhibit 22; exhibit 26 to Plaintiffs' response to Defendants Barron and Brown's motion is the same as exhibit 25 to SPI Defendants' motions.  Compare Doc. 60, Pls.' Combined Resp. in Opp. to SPI Defs.' Mots. for Summ. J., Index of Appendices with Doc. 71, Pls.' Resp. in Opp. to Uretek Defs.' No-Evid. Mot. for Summ. J., Index of Appendices.

[64]     The court explained to the parties that documents upon which a party seeks to rely as evidence must be translated.  See Doc. 46, Tr. of Hr'g Dated May 19, 2017 p. 29 (explaining ).

they were produced in discovery by Defendant Uretek. As to the first, Plaintiffs, as the parties offering the evidence, need to have it translated. As to the second, the court agrees that Defendant Uretek's production of documents is an admission of the authenticity of those documents, but Defendant Uretek cannot make that admission for SPI Defendants. The objections are **SUSTAINED.**

- Exhibits 5-19 were produced by Defendant Uretek, and Defendants Barron and Brown argue that, because Plaintiffs "apparently" based authentication of those exhibits on the "sole fact" that Defendant Uretek produced them, they are "unauthenticated" as to Defendants Barron and Brown.[65] As mentioned above Defendant Uretek's production of documents is an admission of the authenticity of those documents. Unless Defendants Barron and Brown, who are officers of Defendant Uretek, are suggesting that Defendant Uretek produced documents that are not what Defendant Uretek claimed them to be, a point Defendants Barron and Brown do not make, the court finds no reason to require Plaintiffs to provide additional authentication. The objection is **OVERRULED.**

- Exhibit 21 contains English-language documents (in addition to the untranslated-Spanish portions). Defendants challenge those documents on the basis that they are foreign official records that are not properly authenticated pursuant to Federal Rule of Civil Procedure ("Rule") 44. The only English-language documents included in Exhibit 21 are a letter from Defendant Galen on behalf of SPI to ALSO, a letter from Jose Luna on behalf of BaySystems to whom it may concern, and a copy of U.S. Patent Number 6,521,673 B1. None of these three documents are foreign official records subject to the means of proving described in Rule 44. The letters are private documents that must be authenticated by either the authors or the recipients. Alvarez's declaration testimony that Plaintiffs and its agents obtained the documents "thought [sic] formal Mexican legal processes" does nothing to establish that the documents are what Plaintiffs say they are. Even if it did, the statement is hearsay. The U.S. Patent is an official domestic publication not a foreign document. The court does not rely on the information (unless also found in an admissible, authenticated exhibit) in any of these exhibits. The objection is **OVERRULED.**

- Exhibit 23 contains excerpts from Alvarez's deposition

---

[65]    Doc. 73, Defs. Barron & Brown's Reply pp. 1-2.

testimony. Defendants Barron and Brown object to the testimony because it includes "pure speculation" and fails to demonstrate: (1) "that Alvarez had any first[-]hand knowledge of any of the matters he speculat[d] about;" (2) "that Barron or Brown ever gave any documents allegedly obtained from Plaintiffs to any third party;" or (3) that Plaintiffs have trade secrets.[66] Defendants Barron and Brown fail to show that Alvarez's deposition testimony should be excluded for any of these reasons. The court does not consider any incompetent summary judgment evidence. This objection is **OVERRULED.**

- Exhibit 24 is Alvarez's declaration in which he makes only two statements: one statement was offered to authenticate the documents in Exhibit 21 and is discussed above; and one was offered to assert that ALSO continued, as of January 26, 2018, to "compete and steal projects from [Plaintiff] Urelift based upon the authority ALSO ha[d] illegally received from [Defendants]" and that Plaintiff "Urelift ha[d] incurred substantial losses" that continued to be incurred.[67] Although Avarez implies legal conclusions (e.g., steal, illegal), his assertion that Plaintiff Urelift continued to face competition and suffer losses is admissible. These objections are **SUSTAINED IN PART AND OVERRULED IN PART.**

- Exhibit 25 to Plaintiffs' response to SPI Defendants' motions and exhibit 26 to Plaintiffs' response to Defendants Barron and Brown's motion is Isaac Villarreal's declaration in which he offers the same statement as Alvarez to support authentication of Exhibit 21. Defendants object to that statement. For the same reasons stated above, that statement fails to authenticate the English-language documents in Exhibit 21. The objections are **SUSTAINED.**

- Defendants Barron and Brown object to "global incorporation of the entirety" of Plaintiffs' other responses in the case without identifying specific sections of those responses to apply to the claims Defendants Barron and Brown challenge.[68] The court has not relied on the statements of global incorporation in addressing Defendant Barron and Brown's summary judgment motion. This objection is **OVERRULED.**

---

[66]  Id. pp. 2-3.

[67]  Doc. 60-24, Ex. 24 to Pls.' Combined Resp. in Opp. to SPI Defs.' Mots. for Summ. J., Decl. of Alvarez.

[68]  Doc. 73, Defs. Barron & Brown's Reply p. 2 (emphasis omitted).

## C.   <u>Plaintiffs' Objections</u>

Rule 56(c)(4) requires that declarations "be made on personal knowledge, set out facts that would be admissible in evidence, and show that . . . the declarant is competent to testify on the matters stated."  Plaintiffs object to the declarations of each of the Howards and to the declaration of Galen on behalf of SPI on the basis that "they contain nothing more than conclusory statements without any supporting evidence."[69]  All three declarations are made on personal knowledge (asserting lack of knowledge as to many issues), offer admissible facts, and demonstrate the declarants' competence to provide testimony on the subject matter.  Plaintiffs' objection is **OVERRULED**.

Rule 56(a) requires a summary judgment movant to identify, for each challenged claim, the basis on which it is seeking summary judgment and to demonstrate that there is no genuine dispute of material fact and that it is entitled to judgment as a matter of law.  Plaintiffs object to Defendants Barron and Brown's filing of a "no evidence" summary judgment motion.  The court agrees that federal procedures and burdens, not state, govern Defendant Barron and Brown's motion.  The U.S. Supreme Court recognized that, where there is "complete failure of proof concerning an essential element of the nonmoving party's case," all other facts are immaterial and

---

[69]    Doc. 60, Pls.' Combined Resp. in Opp. to SPI Defs.' Mots. for Summ. J. p. 2.

the movant "is 'entitled to judgment as a matter of law' because the nonmoving party ha[d] failed to make a sufficient showing on an essential element of [its] case with respect to which [it] ha[d] the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The court applies federal standards in deciding all of the pending motions for summary judgment. The court does not look for evidence of elements not specifically challenged by Defendants. This objection is **OVERRULED**.

### III. Dispositive Motions

SPI Defendants' motions for summary judgment are substantively identical except for parts of the discussions on individual versus corporate capacity. They argue that Plaintiffs cannot produce evidence of damages, interference, reasonable probability of a prospective business relationship, the existence of a trade secret, or any conduct giving rise to a trade-secret cause of action. SPI Defendants further contend that their actions were justified or privileged. Defendants Barron and Brown also challenge Plaintiffs' ability to produce evidence in support of every element of each asserted claim and argue that the economic loss rule applies, that Defendants Barron and Brown cannot be personally liable when acting for the corporation, and that they cannot conspire with Defendant Uretek. As the court has determined that Blacker's testimony is mostly admissible and offers some evidence of damages, the court finds in Plaintiffs' favor regarding the production of evidence

regarding damages and, herein, considers the movants' other arguments.

## A.  Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists on any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Celotex Corp., 477 U.S. at 322; Stauffer v. Gearhart, 741 F.3d 574, 581 (5th Cir. 2014).  A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th Cir. 2001).  To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party.  See Royal v. CCC & R Tres Arboles, L.L.C., 736 F.3d 396, 400 (5th Cir. 2013)(quoting Anderson, 477 U.S. at 248).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues.  Celotex Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992).  The movant may meet this burden by demonstrating an absence of evidence in support of one or more elements of the case

for which the nonmovant bears the burden of proof.  See Celotex
Corp., 477 U.S. at 322; Exxon Corp. v. Oxxford Clothes, Inc., 109
F.3d 1070, 1074 (5th Cir. 1997).  If the moving party carries its
burden, the nonmovant may not rest on the allegations or denials in
his pleading but must respond with evidence showing a genuine
factual dispute.  Stauffer, 741 F.3d at 581 (citing Hathaway v.
Bazany, 507 F.3d 312, 319 (5th Cir. 2007)).

### III. Analysis

The court first addresses the economic loss rule and then
turns to each of the challenged causes of action.

### A. Economic Loss Rule

In 2014, the Supreme Court of Texas explained Texas
jurisprudence on the relationship between tort and contract
actions:

> In actions for unintentional torts, the common law has
> long restricted recovery of purely economic damages
> unaccompanied by injury to the plaintiff or his
> property—a doctrine we have referred to as the economic
> loss rule.  The rule serves to provide a more definite
> limitation on liability than foreseeability can and
> reflects a preference for allocating some economic risks
> by contract rather than by law.  But the rule is not
> generally applicable in every situation; it allows
> recovery of economic damages in tort, or not, according
> to its underlying principles.

LAN/STV v. Martin K. Eby Constr. Co., 435 S.W.3d 234, 235-36 (Tex.
2014); see also Sw. Bell Tel. Co. v. DeLanney, 809 S.W.2d 493, 494-
95 (Tex. 1991)(holding that a negligence claim based on the
negligent failure to perform a contract was not actionable because

the claim sounded in contract rather than tort).

In a five-sentence argument, Defendants Barron and Brown implore the court to find that the economic loss rule applies to prohibit Plaintiffs from pursuing any claims other than their breach-of-contract claim against Defendant Uretek. They argue: "Here, there is in reality only one claim—that Uretek breached the Sublicense by competing with U[]relift. All of the damages claimed by Urelift are derived from this simple set of facts."[70]

Defendants Barron and Brown wholly fail to demonstrate that the economic loss rule applies or that it should apply to the set of facts or the causes of action in this lawsuit. They actually admit that they found no analogous case that supports applying the rule to the facts of this case. Accordingly, the court finds that they have not shown that they are entitled to judgment as a matter of law.

**B.  Breach of Contract (NDA) Against Defendants Barron and Brown**

The elements of a breach-of-contract claim under Texas law are: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." Mullins v. TestAmerica Inc., 564 F.3d 386, 418 (5th Cir. 2009)(internal quotation marks omitted)(quoting Aquiar v. Segal, 167 S.W.3d 443, 450 (Tex. App.–Houston [14th Dist.] 2005,

---

[70]    Doc. 62, Defs. Barron & Brown's No-Evid. Mot. for Summ. J. p. 4.

pet. denied)). In order to meet the first element, a plaintiff must produce evidence of:

> (1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) a communication that each party consented to the terms of the contract; (5) execution and delivery of the contract with the intent that it be mutual and binding on both parties; and (6) consideration.

Coleman v. Reich, 417 S.W.3d 488, 491 (Tex. App.–Houston [14th Dist.] 2013, no pet.)(citing Advantage Physical Therapy, Inc. v. Cruse, 165 S.W.3d 21, 24 (Tex. App.–Houston [14th Dist] 2005, no pet.)). "Contract formation is a question of fact under Texas law." J.D. Fields & Co. v. U.S. Steel Int'l, Inc., 426 F. App'x 271, 280 (5th Cir. 2011)(unpublished).

Defendants Barron and Brown argue that neither of them signed the NDA and that Plaintiffs cannot produce evidence that Defendants Barron and Brown used any information protected by the NDA to damage Plaintiffs.

The NDA stated that Defendant Barron, not Defendant Uretek, entered into the agreement with Plaintiffs and NDT, Inc., Intec Corporation, Inc, and ICFS, Inc. All of the provisions in the agreement specifically bound Defendant Barron personally, without any mention of Defendant Uretek. Defendant Barron's signature line, however, stated that he signed for Defendant Uretek. Therefore, on its face, the NDA is ambiguous as to the party with which Plaintiffs and the other companies intended to contract. Absent a resolution of that fact issue, the court cannot determine

whether the NDA was an existing contract between Plaintiffs and Defendant Barron as required for a breach-of-contract claim.

Moreover, Alvarez's testimony raises a fact question whether Defendant Brown breached confidentiality in 2009 and/or 2010. If his testimony proves to be true and the confidentiality breach occurred after the execution of the NDA in January 2010, Defendant Barron may be responsible, according to the terms of the NDA, for Defendant Brown's alleged breach.

Defendant Brown, who signed the agreement only as a witness, did not enter the agreement as a party consenting to the terms of the NDA. No evidence indicates that Plaintiffs and the other contracting companies intended to form a contract with Defendant Brown. Although the NDA anticipated that all employees who were privy to the subject information would agree to keep it confidential, those employees, including Defendant Brown, were in no way bound by that or any other term of NDA.

Plaintiffs' breach-of-contract claim against Defendant Barron survives summary judgment, but the claim against Defendant Brown does not.

C.  **Tortious Interference with Contracts (Sublicense and NDA) Against SPI Defendants**

The elements of a claim for tortious interference with a contract are: (1) a contract existed; (2) the defendant "willfully and intentionally interfered with that contract;" (3) the interference proximately caused damage; and (4) the plaintiff

suffered actual damages.  <u>Butnaru v. Ford Motor Co.</u>, 84 S.W.3d 198, 207 (Tex. 2002).  The plaintiff bears the burden of producing evidence that "the defendant knowingly induced one of the contracting parties to breach its contract obligations."  <u>Rimkus Consulting Grp., Inc. v. Cammarata</u>, 688 F. Supp.2d 598, 674-75 (S.D. Tex. 2010)(citing Texas cases).

SPI Defendants argue that Plaintiffs cannot produce evidence that SPI Defendants interfered with the Sublicense or NDA.  They also contend that their actions were justified by their business of sales.

Plaintiffs' allegations and evidence raise suspicion due to the close family relationship between Defendants Mindy and Barron, the timing of the formation of Defendant SPI, Defendant Barron's active role in Defendant SPI's business, Defendant Mindy's denial of an active role in Defendant SPI's business, and Defendant SPI's apparently limited operations as evidenced by its admission that Defendant Galen "run[s] all aspects of the company."[71]  SPI Defendants and Defendant Barron's proclaimed innocence strains credulity.  However, suspicion and strained credulity do not make a federal case.

SPI Defendants obviously knew that they were facilitating business relations between Uretek Defendants and ALSO.  The

---

[71]    Doc. 52-6, Ex. 6 to Def. Galen's Mot. for Summ. J., Decl. of Def. Galen p. 1.

evidence also suggests that SPI Defendants' facilitation of that business relationship interfered with the Sublicense. However, Plaintiffs point to no evidence that SPI Defendants knew of Plaintiffs' contractual standing with Defendant Uretek, much less the purpose or provisions of the Sublicense. SPI Defendants deny that they knew of Plaintiffs' contracts with any entity. Absent that evidence, Plaintiffs cannot prove that SPI Defendants acted willfully or intentionally in their interference with the Sublicense, an essential element of their claim.

This claim does not survive summary judgment.[72]

## D.   **Tortious Interference with Prospective Business Relations Against All Defendants**

The elements of a claim for tortious interference with prospective business relations are:

> "[(1)] a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result."

---

[72]    Because the court finds a lack of evidence on Plaintiffs' prima facie case, the court does not find it necessary to discuss SPI Defendants' argument related to individual versus corporate liability. A discussion of the case cited by SPI Defendants (Holloway v. Skinner, 898 S.W.2d 793 (Tex. 1995)), can be found in the next section concerning the tortious-interference claim against Defendants Barron and Brown. The court also does not find it necessary to address SPI Defendants' defensive argument that their actions were "justified and privileged" because they were doing "nothing more than the sale of products." Doc. 52, Def. Galen's Mot. for Summ. J. p. 9; Doc. 53, Def. SPI's Mot. for Summ. J. p. 9; Doc. 55, Def. Mindy's Mot. for Summ. J. p. 9.

D'Onofrio v. Vacation Publ'ns, Inc., 888 F.3d 197, 214 (5th Cir. 2018)(quoting Coinmach Corp. v. Aspenwood Apartment Corp., 417 S.W.3d 909, 923 (Tex. 2013)).

## 1. SPI Defendants

SPI Defendants argue that Plaintiffs cannot produce evidence of a reasonable probability of entering a business relationship except for through Blacker's expert report, which they moved to exclude, and cannot produce evidence that SPI Defendants interfered. They also contend that their actions were justified by nature of their business, which involved sales.

For this cause of action, it is not necessary that Plaintiffs prove that SPI Defendants had knowledge of Plaintiffs' contractual relationship with Uretek Defendants. However, Plaintiffs' evidence only goes so far as to suggest that they had a potential business opportunity with METRO and that SPI Defendants' actions interfered with that potential business relationship by selling products to ALSO, which ALSO used in its competitive bid for the project.

As stated above, SPI Defendants' conduct may have been suspicious. For example, Defendant Mindy's asseveration that she had no active role in the running of Defendant SPI is belied by the number of business emails directed her way. If her declaration is correct, those emails suggest that she was, at the very least, a willing pawn in her father's actions. But no competent summary judgment evidence demonstrates a conscious desire, on the part of

SPI Defendants, to prevent the relationship between Plaintiffs and METRO from occurring or the knowledge that the interference was at least substantially certain to occur as a result of their actions.

This claim does not survive summary judgment.[73]

## 2. Defendants Barron and Brown

These Defendants argue that Plaintiffs cannot produce any evidence that Defendants Barron and Brown "took any actions[74] that were not in the furtherance of their corporate employer."[75] They also assert that Plaintiffs cannot prove that Defendants Barron and Brown owed Plaintiffs a duty, in particular, that Defendant Brown had no duty to refrain from performing consulting work in Mexico. Finally, Defendants Barron and Brown argue that no evidence supports a finding of a potential relationship that was prevented by them or a finding that their actions proximately caused Plaintiffs any injury.

In support of the first-listed argument, Defendants Barron and Brown cite Holloway v. Skinner, 898 S.W.2d 793, 794 (1995), a case

---

[73]    Here again, the court finds it unnecessary, due to the failure of evidence in support of Plaintiffs' prima facie case, to address SPI Defendants' defensive argument that their actions were "justified and privileged" because they were doing "nothing more than the sale of products." Doc. 52, Def. Galen's Mot. for Summ. J. p. 10; Doc. 53, Def. SPI's Mot. for Summ. J. p. 10; Doc. 55, Def. Mindy's Mot. for Summ. J. p. 10.

[74]    In defense to this claim, Defendants Barron and Brown argue that they were merely "selling polymers to SPI on behalf of their employer."  Doc. 62, Defs. Barron & Brown's No-Evid. Mot. for Summ. J. p. 5.  That remains to be seen, but, regardless, that fact is immaterial to any element Plaintiffs are required to prove.

[75]    Doc. 62, Defs. Barron & Brown's No-Evid. Mot. for Summ. J. p. 5.

that answered the question whether a president, director, and largest shareholder of a corporation could be held liable for tortiously interfering in his corporation's contract with a third party. The court held that a corporate officer or director who "acts in good faith and believes that what he does is for the best interest of the corporation" cannot be held liable in damages for inducing a breach of the corporation's contract, but an agent who is solely motivated by his personal interests can be. Id. at 795, 796.

Holloway applies only to cases where the corporate agent is accused of interfering with one of his corporation's contracts, clearly not the case here where Plaintiffs accuse Defendants Barron and Brown of interfering with prospective business relations, not with a Uretek contract. A claim of tortious interference with prospective business relations does not require that Plaintiffs prove Defendants Barron and Brown acted against the interest of their corporate employer. In fact, a corporate employee may be held personally liable for "tortious acts which he directs or participates in during his employment." Leyendecker & Assocs., Inc. v. Wechter, 683 S.W.2d 369, 375 (Tex. 1984); see also Miller v. Keyser, 90 S.W.3d 712, 717 (Tex. 2002)(referring to "Texas' longstanding rule that a corporate agent is personally liable for his own fraudulent or tortious acts").

Regarding duty, Defendants Barron and Brown again rely on case

law that addresses another cause of action, here negligence, in asserting that duty "is the threshold issue in a tort action."[76] Duty is also not an element for which Plaintiffs must produce any evidence to survive summary judgment on tortious interference with prospective business relations.

Defendant Barron's email communications in the months June through September 2016 that involved communications about and to ALSO, raise the inference that ALSO was assisted by Defendant Barron in winning the Metro contract in Mexico causing Plaintiff Urelift's loss of that prospective business opportunity and that the loss caused damages as explained in Blacker's expert report. This evidence satisfies Plaintiffs' burden on summary judgment with regard to the claim against Defendant Barron, who cannot claim ignorance of his company's relationship with Plaintiffs or the effect of his actions in promoting and assisting ALSO. The evidence reveals his actions to be wholly intentional. Plaintiffs' claim of tortious interference with business relations against Barron survives to the next stage of the lawsuit. Plaintiffs, however, produced no evidence regarding Defendant Brown's alleged interference. Therefore, the claim of tortious interference with business relations as against Defendant Brown does not survive.

## E. <u>Trade Secret Misappropriation Against All Defendants</u>

---

[76]    <u>Id.</u> (citing <u>Mission Petroleum Carriers, Inc. v. Solomon</u>, 106 S.W.3d 705, 710 (Tex. 2003)(discussing negligence).

The elements of misappropriation of trade secrets are: "(1) a trade secret existed; (2) the trade secret was acquired through a breach of a confidential relationship or was discovered by improper means; (3) the defendant used the trade secret without the plaintiff's authorization; and (4) the plaintiff suffered damages as a result." Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc., 300 S.W.3d 348, 366-67 (Tex. App.–Dallas 2009, pet. denied).

### 1. SPI Defendants

SPI Defendants argue that Plaintiffs fail to identify any trade secrets as defined in common and/or statutory law and that SPI Defendants took no actions that could give rise to a misappropriation cause of action. Plaintiffs point to no evidence that SPI Defendants ever had access to Plaintiffs' trade secrets or that they used those trade secrets in any way. This claim does not survive summary judgment.

### 2. Defendants Barron and Brown

Defendants Barron and Brown also contend that Plaintiffs failed to clearly identify their trade secrets and that Plaintiffs can produce no evidence that Defendants Barron and Brown "ever saw the information, copied it or disclosed it to any third person, including ALSO."[77]

Plaintiffs produced no evidence to support the

---

[77] Doc. 62, Defs. Barron & Brown's No-Evid. Mot. for Summ. J. p. 6.

misappropriation claim against Defendant Barron. However, Plaintiffs produced evidence in the form of Alvarez's testimony that, in 2009 and/or 2010, Defendant Brown acquired engineering information that included calculations, drawings, geotechnical information, and geophysical information related to the METRO project. According to Alvarez, Defendant Brown obtained the information pursuant to the NDA and shared the information with ALSO. This is sufficient summary judgment evidence to support Plaintiffs' misappropriation claim against Defendant Brown at this stage of the lawsuit. The claim, as against Defendant Barron, however, does not survive.

## F. <u>Conspiracy Against All Defendants</u>

The elements of a conspiracy claim are: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result." <u>Tri v. J.T.T.</u>, 162 S.W.3d 552, 556 (Tex. 2005).

Defendants argue that agents of a corporation cannot conspire with their corporation while acting in their corporate capacity. SPI Defendants further challenge Plaintiffs' ability to show that any of them entered a conspiracy with any other party. Defendants Barron and Brown contend that Plaintiffs cannot show proximate cause.

In support of their arguments, Defendants cite <u>Texas-Ohio Gas,</u>

_Inc. v. Mecom_, 28 S.W.3d 129, 138 (Tex. App.—Texarkana 2000). That court reiterated the general proposition that "a corporation cannot conspire with itself, no matter how many of its agents may participate in the corporate action." _Id._ (quoting _Fojtik v. 1st Nat'l Bank of Beeville_, 752 S.W.2d 669, 673 (Tex.App.—Corpus Christi 1988, writ denied)). However, the court in _Texas-Ohio Gas, Inc._, did recognize "that agents can conspire with each other if they are acting in a different capacity or for a personal purpose of their own." _Id._ (citing cases).

Plaintiffs describe the "scheme concocted by Defendants" to be a conspiracy to utilize "[Defendant] SPI as a conduit to unlawfully assist ALSO to compete with [Plaintiff] Urelift in Mexico."[78] The problem for Plaintiffs is that they fall woefully short of sufficient competent summary judgment evidence of the scheme to satisfy all of the elements of a conspiracy claim. The only individual Defendant whom Plaintiffs identify as engaged in conduct for a personal purpose is Defendant Brown, who volunteers in the motion that he was "personally selling his professional [consulting] services" in Mexico.[79]

Even spotting Plaintiffs Defendant Brown's personal purpose for his actions, they fail to provide evidence that his activity

---

[78]    Doc. 60, Pls.' Combined Resp. in Opp. to SPI Defs.' Mots. for Summ. J. p. 19; Doc. 71, Pls.' Resp. in Opp. to Defs. Barron & Brown's No-Evid. Mot. for Summ. J. p. 18.

[79]    Doc. 62, Defs. Barron & Brown's No-Evid. Mot. for Summ. J. p. 5.

was in support of the alleged scheme.  Granted, Plaintiffs have identified multiple individuals and entities that Plaintiffs assert formed a conspiracy, have identified a possible motive, and have produced evidence in support of tortious activity, but Plaintiffs fail to identify, much less, point to any evidence of a meeting of the minds between any two parties.

Plaintiffs' conspiracy claim fails on summary judgment as to all Defendants.

### IV.   Conclusion

Based on the foregoing, the court **GRANTS IN PART AND DENIES IN PART** Defendants' motion to exclude, **GRANTS** Defendant Galen's motion, **GRANTS** Defendant SPI's motion, **GRANTS** Defendant Mindy's motion, **GRANTS IN PART AND DENIES IN PART** Defendants Barron and Brown's motion.  The court **DENIES** the motion to strike Plaintiffs' surreply to SPI Defendants' summary judgment reply.

The remaining claims of those challenged on summary judgment are:  (1) breach of contract (NDA) against Defendant Barron;  (2) tortious interference with prospective business relations against Defendant Barron; and (3) trade secret misappropriation against Defendant Brown.  No claims remain against SPI Defendants.

**SIGNED** in Houston, Texas, this 28th day of September, 2018.

_____
U.S. MAGISTRATE JUDGE