United States District Court
Southern District of Texas
**ENTERED**
June 12, 2020
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| URETEKNOLOGIA DE MEXICO S.A. | § | |
| DE C.V., et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-16-2762 |
| | § | |
| URETEK (USA), Inc., et al., | § | |
| | § | |
| Defendants. | § | |

### MEMORANDUM OPINION

Pending before the court is Plaintiff Ureteknologia de Mexico S.A.,'s ("UdeM") Motion for Attorney's Fees (Doc. 130) and the response filed thereto.  The motion is **GRANTED IN PART and DENIED IN PART**.

On January 17, 2020, the court granted in part and denied in part Defendant Uretek (USA)'s ("Uretek") Motion for Judgment as a Matter of Law.[1]  The court found that Plaintiff Urelift S.A. de C.V's ("Urelift") lost profit damages were speculative as a matter of law but found that UdeM's liquidated damages award for violation of the Sublicense Agreement's non-compete provision was supported by the evidence.  The court entered judgment for UdeM in the amount of $1,460,000.

UdeM now seeks $533,530 in attorney's fees through the trial of this action as well as anticipatory fees if successful on

---

[1]    See Doc. 127, Mem. Op. Dated Jan. 17, 2020.

appeal.[2]  UdeM also seeks $289,556 in expert fees and $24,055.11 in other expenses.[3]  In its fee request, UdeM acknowledges that its fee request includes hours spent prosecuting Urelift's unsuccessful contract and tortious interference claims against Uretek, Brent Barron ("Barron"), Randall Brown ("Brown"),[4] Structural Plastics, Inc. ("SPI"), Cindy Barron Howard, and Galen Howard.[5]  UdeM argues that these claims are so intertwined that the hours need not be segregated between successful and unsuccessful claims. Alternatively, UdeM argues that if the court finds that the claims are not inextricably intertwined, the court should only reduce the attorney's fees by fifteen percent for hours attributable to the unsuccessful claims.

In response, Uretek argues that UdeM cannot recover fees under Section 38.001(8) of the Texas Civil Practice and Remedies Code because: (1) Chapter 15 of the Texas Business and Commerce Code prohibits an award of attorney's fees; (2) UdeM failed to prove presentment of fees as required by Section 38.002 of the Civil Practice and Remedies Code; (3) the fees claimed are not reasonable; (4) UdeM failed to segregate the fees between

---

[2]    See Doc. 130, UdeM's Mot. for Attorney's Fees p. 3.

[3]    See id. pp. 6-7.  The other expenses include copy charges, service fees, travel expenses, deposition charges legal research charges, fax charges and non-attorney work of paralegals.   Id.

[4]    Uretek, Barron and Brown will be referred to collectively as "Uretek Defendants."

[5]    SPI, Cindy Barron Howard and Galen Howard will be referred to collectively as "SPI Defendants."

recoverable and unrecoverable claims; (5) anticipatory fees should not be awarded; (6) expert witness fees are not recoverable under Chapter 38 of the Texas Civil Practice and Remedies Code; (7) expert witness fees related to Urelift's unsuccessful claims for lost profits cannot be recovered; and (8) other expenses, including paralegal time, are not recoverable.  UdeM did not reply to these arguments.

The parties agree that the resolution of these issues is governed by Texas law because the underlying dispute is governed by Texas law.  See Mathis v. Exxon Corp., 302 F.3d 448, 461 (5th Cir. 2002).  In Texas, a prevailing party "may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for . . . an oral or written contract.  See Tex. Civ. Prac. & Rem. Code § 38.001(8).  The amount of reasonable attorney's fees is discretionary.  See Fluorine on Call, Ltd. v. Fluorgas Ltd., 380 F.3d 849, 866 (5th Cir. 2004).  One method of computing a reasonable fee is the "lodestar" method, which is the product of reasonable hours times a reasonable rate.  See Toshiba Mach. Co., Am. v. SPM Flow Control, Inc., 180 S.W.3d 761, 782 (Tex. App. – Fort Worth 2005, no pet.).

UdeM claims entitlement to fees pursuant to Section 38.001(8) as well as pursuant to the Sublicense Agreement between itself and Uretek.  That agreement provides that "[t]he prevailing party in

3

any action by and between the parties hereto shall be entitled to recover its reasonable attorney's fees and expenses, including but not limited to court costs incurred in such action."[6]

In support of its application for fees, UdeM attached the affidavit of Isaac Villareal, its lead counsel.  In the affidavit, Villareal seeks fees using the lodestar method.  Before the court considers the reasonableness of the fees sought, it must address two preliminary issues raised by Uretek.

## A.   Chapter 15 of the Texas Business and Commerce Code

Defendant first argues that the Covenants Not to Compete Act ("Act") of the Texas Business and Commerce Code preempts an award of attorney's fees for breach of a contractual non-compete provision except in one limited circumstance involving personal service agreements.  See Tex. Bus. & Comm. Code §§ 15.50 et seq.

Section 15.51 of the Act sets out procedures and remedies available in actions to enforce covenants not to compete.  Section 15.51(b) provides, "If the primary purpose of the agreement to which the covenant [not to compete] is ancillary is to oblige the promisor to render personal services" then the promisee has the burden to show that the covenant not to compete meets the reasonableness criteria listed in Section 15.50.

Section 15.51(c) states that if the covenant not to compete is

---

[6]    Doc. 130-5, Ex. B to UdeM's Mot. for Attorney's Fees, Sublicense Agreement p. 6.

ancillary to an otherwise enforceable agreement but contains certain limitations that are determined by a court to be unreasonable, the court shall reform the contract to bring those limitations within the bounds of reasonableness. The section goes on to provide that if the primary purpose of the agreement was for personal services, and the promisor/employee establishes that the promisee/employer knew at the time that the limitations in the non-compete provision were not reasonable and imposed a greater restraint than necessary to protect its business interests, the promisor/employee is entitled to his costs and attorney's fees in defending an action brought by the promisee/employee to enforce the non-compete provision.

Section 15.52 provides that the remedies stated in Section 15.51 are "exclusive and preempt any other criteria for enforceability of a covenant not to compete or procedures and remedies in an action to enforce a covenant not to compete under common law or otherwise."

Several courts have found that enforcement of a non-compete contract under Section 15.52 preempts a party's ability to seek attorney's fees under Section 38.001(8) of the Texas Civil Practice and Remedies Code. See Glattly v. Air Starter Components, Inc., 332 S.W.3d 620, 644 (Tex. App. – Houston [1st Dist.] 2010, pet. denied); Rieves v. Buc-ee's Ltd., 532 S.W.3d 845, 854 (Tex. App. – Houston [14th Dist.] 2017, no pet.).

In <u>Glattly</u>, the trial court found that the case involved enforcement of a non-compete provision and that the Act preempted other procedures and remedies. <u>Glattly</u>, 332 S.W.3d at 645.  The court denied fees because the Act did not permit employers to recover attorney's fees in suits to protect their rights under the Act. <u>Id.</u>  The appellate court agreed that the trial court properly denied the request for fees by the employer under Section 38.001. <u>Id.</u>

The <u>Rieves</u> court also found that Section 15.52 of the Act preempted a fee award under both Section 38.001 of the Texas Civil Practice and Remedies Code and the Declaratory Judgments Act and reversed a fee award to the employer.  See <u>Rieves</u>, 532 S.W.3d at 854.  In both cases, the award of fees was challenged in the trial court based on the applicability of the Covenants Not to Compete Act.

But this case was not tried under the Covenants Not to Compete Act.  Nowhere in the Joint Pretrial Order is a contention that any party believed that the breach of contract claims fell under the Act.[7]  In the Agreed Propositions of Law section of the Joint Pretrial Order, common law was cited as the basis for Plaintiffs' contract claims, not the Act.[8]  Also, the applicability of the Act was not raised by Uretek in the Contested Propositions of Law

---

[7]    <u>See</u> Doc. 109, Jt. Pretrial Ord.

[8]    <u>See</u> <u>id.</u> pp. 13-14.

section.

"It is a well-settled rule that a joint pretrial order signed by both parties supersedes all pleadings and governs the issues and evidence to be presented at trial." Kona Tech. Corp. v. S. Pac. Transp. Co., 225 F.3d 595, 604 (5th Cir. 2000)(quoting McGehee v. Certainteed Corp., 101 F.2d 1078, 1080 (5th Cir. 1996)). If a claim or issue is omitted from the pretrial order, it is waived. Allen v. Radio One of Texas II, L.L.C., 515 F. App'x 295, 303 (5th Cir. 2013)(unpublished) (citing Elvis Presley Enters., Inc. v. Capece, 141 F.3d 188, 206 (5th Cir. 1998).

The court concludes that the applicability of the Covenants Not to Compete Act cannot be raised at this late date to bar a fee request under Section 38.001(8) or pursuant to the parties' Sublicense Agreement.

## B.  Presentment of a Fee Demand

Uretek next argues that UdeM failed to plead and prove presentment of its claim, citing Tex. Civ. Prac. & Rem. Code § 38.002.  That section states, "To recover attorney's fees under this chapter (1) the claimant must be represented by an attorney; (2) the claimant must present the claim to the opposing party . . .; and (3) payment for the just amount owed must not have been tendered before the expiration of the 30th day after the claim is presented."  The Texas Supreme Court has stated that the purpose of the presentment requirement "is to enable the debtor to pay the

claim within the thirty days and avoid liability for attorney's fees." Ashford Dev., Inc. v. USLife Real Estate Servs. Corp., 661 S.W.2d 933, 936 (Tex. 1983).  The presentment does not have to include an amount owed.  See Std. Constructors, Inc. v. Chevron Chem. Co., Inc., 101 S.W.3d 619, 627 (Tex. App. – Houston [1st Dist.] 2003, pet. denied).

The Fifth Circuit has found that a party may recover fees under Chapter 38 of the Texas Practice and Remedies Code if it clearly presented a claim for attorney's fees.  See Enserch Corp. v. Shand Morahan & Co., Inc., 952 F.2d 1485, 1501 (5th Cir. 1992).

In the present case, UdeM and Urelift clearly sought attorney's fees as prevailing parties under Tex. Civ. Prac. & Rem. Code § 38.001(8) in their complaint.  This is adequate presentment to satisfy Section 38.002.  The court also notes that UdeM seeks fees pursuant to the Sublicense Agreement, which does not contain a presentment requirement.  Defendant's argument is overruled.

**C.  The Lodestar Calculation and Reasonableness of the Claimed Attorney's Fees**

Under Texas law, a party seeking attorney's fees using the lodestar method bears the burden of documenting hours expended on the litigation and the value of the hours.  El Apple I, Ltd. v. Olivas, 370 S.W.3d 757, 760 (Tex. 2012).  "[O]nce the lodestar is established, a court may raise or lower the lodestar amount if certain relevant factors indicate an adjustment is necessary." Williams-Pyro, Inc. v. Barbour, 408 S.W.3d 467, 483 (Tex. App. – El

Paso 2013, pet. denied).

The reasonableness of the hours and rates is determined by looking to the factors set out in Arthur Andersen & Co. v. Perry Equip. Corp., 945 S.W.2d 812, 818 (Tex. 1997). Relevant here is factor (4), the amount claimed and the results obtained.

As outlined in his affidavit, Villareal and his firm claimed attorney's fees in the amount of $533,530. Villareal billed 1337 hours through trial at $325 per hour; Mr. Utermohlen billed 325.2 hours at $250 per hour; Mr. Green billed 9.6 hours at $325 per hour; Ms. Gordon billed 40 hours at $250 per hour and Ms. Wilson billed 23 hours at $250 per hour.[9]  The reasonableness of the hourly rates is not disputed, but Uretek does contest the reasonableness of the number of hours in light of the limited success of Plaintiffs' claims against Uretek.

Texas allows recovery of attorney's fees only for those claims on which the party prevailed.  In Tony Gullo Motors I, L.P. v. Chapa, 212 S.W.3d 299, 313 (Tex. 2006), the Texas Supreme Court held that if any attorney's fees relate solely to a claim for which such fees are unrecoverable, the party seeking the fees must segregate its recoverable fees from its unrecoverable fees.  The burden is on the party seeking the fees to show that segregation is not required.  Clearview Props., L.P. v. Prop. Tex. SC One Corp., 287 S.W.3d 132, 144 (Tex. App. – Houston [14th Dist.] 2009, pet.

---

[9]    See Doc. 130-2, Ex. A-1 to UdeM's Mot. for Attorney's Fees, Fee Chart.

denied).

Here, Urelift and UdeM alleged breach of contract claims against Uretek (Count 1), tortious interference with the Sublicense Agreement claims against the SPI Defendants (Count 2), tortious interference with prospective business relations claims against all defendants (Count 3), breach of a non-disclosure agreement claims against the Uretek Defendants (Count 4), tortious interference with the non-disclosure agreement claims against the SPI Defendants (Count 5), trade secret misappropriation claims against all defendants (Count 6) and civil conspiracy against all defendants (Count 7).[10]  Only those attorney's fees attributable to Counts 1 and 4 are recoverable by statute, therefore attorney's fees solely attributable to Counts 2, 3, 5, 6, and 7 must be segregated from the recoverable fees under Tony Gullo Motors, 212 S.W.3d at 313.

Although segregation of fees has been required for over a decade, UdeM failed to segregate recoverable fees from non-recoverable fees.  UdeM's attorney supports this lack of segregation with his declaration that the claims of both plaintiffs against all defendants were so intertwined that all legal services claimed for reimbursement advanced the contract claims of UdeM and Urelift.  Therefore, UdeM seeks one-hundred percent of the fees generated by both plaintiffs, even though Urelift was not successful on any claim.  Alternatively, UdeM argues that the court

---

[10]    See Doc. 1, Pls.' Orig. Compl. pp. 7-11.

should only reduce the claimed fees by fifteen percent to take into account the unsuccessful Urelift claims.

This lawsuit was filed on September 13, 2016.[11]  Before this suit was filed, UdeM and Urelift's lead counsel billed $27,219.50 from March to September 13, 2016.  Detailed billing records show that much of this time was duplicative.[12]

The parties conducted significant discovery and filed numerous motions.  UdeM and Urelift filed an unsuccessful Rule 12 motion to dismiss Uretek's counterclaim.[13]  As the non-prevailing party, UdeM is not entitled to fees related to that motion.  UdeM and Urelift were on the receiving end of a motion to compel filed by the Uretek Defendants in February 2017.[14]  The court granted that motion.[15] UdeM is not entitled to fees attributable to that discovery dispute as the non-prevailing party.  The Uretek Defendants filed a second motion to compel discovery against UdeM and Urelift.[16]  The SPI Defendants filed a motion to compel discovery.[17]  And, another motion to compel was filed by the Uretek Defendants to secure

---

[11]    See id.

[12]    See Doc. 130-3, Ex. A-2 to UdeM's Mot. for Attorney's Fees, Billing Records pp. 1-18.

[13]    See Doc. 15, Pls.' Mot. to Dismiss; Doc. 17, Ord. Denying Mot. to Dismiss.

[14]    See Doc. 26, Uretek Defs.' Mot. to Compel.

[15]    See Doc. 29, Ord. Granting Defs.' Mot. to Compel.

[16]    See Doc. 30, Uretek Defs.' 2nd Mot. to Compel.

[17]    See Doc.31, SPI Defs.' Mot. to Compel.

compliance with a previous court order by UdeM and Urelift.[18]  At a hearing held on these pending motions, the court was informed that Urelift and UdeM had produced thousands of pages of documents without designating which documents were in response to any particular discovery request.[19]  The court found Urelift and UdeM's responses inadequate and required supplemental answers for many requests.[20]  UdeM should not recover fees attributable to those discovery disputes as the non-prevailing party.

Defendants filed four motions for summary judgment and a motion to exclude the testimony of Urelift and UdeM's expert, Bruce Blacker ("Blacker").[21]  UdeM and Urelift filed lengthy responses to these motions.[22]  In a memorandum opinion, the court sustained objections to UdeM and Urelift's summary judgment evidence which essentially dumped hundreds of pages of documents into the record without explaining their relevance in any particular way.[23]  Some

---

[18]   See Doc. 42, Uretek Defs.' Mot. to Compel Compliance.

[19]   See Doc. 46, Tr. of Hearing Dated May 19, 2017.

[20]   See id.

[21]   See Doc. 52, Galen Howard's Mot. for Summ. J.(totaling 86 pages of motion and exhibits); Doc. 53, SPI's Mot. for Summ. J. (totaling 84 pages of motion and exhibits); Doc. 55, Mindy Howard's Mot. for Summ. J. (totaling 86 pages of motion and exhibits); Doc. 62, Brown's Mot. for Summ. J.(totaling 9 pages); and Doc. 54, Defs.' Mot. to Exclude Testimony of Blacker (totaling 110 pages of motion and exhibits).

[22]   See Doc. 59, Pls.' Resp. to Defs.' Mot. to Exclude Testimony of Blacker (totaling 201 pages of motion and exhibits); and Doc. 60, Pls.' Resp. to Defs.' Mots. for Summ. J. (totaling 311 pages of motions and exhibits).

[23]   See Doc. 75, Mem. Op. Dated Sept. 28, 2018 pp. 21-24.

documents were in Spanish and had not been not translated.[24]

The court granted Brown's motion for summary judgment on UdeM and Urelift's contract claim, granted SPI Defendants' motions for summary judgment on UdeM and Urelift's tortious interference with contracts claims, granted SPI Defendants and Brown's summary judgment motions on UdeM and Urelift's tortious interference with prospective business relations claims, granted the motions for summary judgment on UdeM and Urelift's trade secret claims against all defendants except Brown, and granted the motion for summary judgment on UdeM and Urelift's conspiracy claims against all defendants.

The court also disallowed one aspect of UdeM and Urelift's expert's testimony as unreliable.[25]  Based on the entire summary judgment record, the court finds that UdeM and Urelift prevailed on approximately fifteen percent of that summary judgment motion practice.  Attorney's fees related to the dismissed causes of action are not recoverable by UdeM.

As outlined in the Joint Pretrial Order, the issues to be tried were:  Urelift and UdeM's breach of contract claims against Uretek; Urelift and UdeM's trade secret claim against Brown; and Urelift and UdeM's tortious interference claims against Uretek and Barron.  Prior to trial, UdeM and Urelift relinquished their breach

---

[24]    See id. p. 22.

[25]    See Doc. 75, Mem. Op. Dated Sept. 28, 2018 p. 20.

of contract claims based on the Non-disclosure Agreement and their trade secret claim against Brown.  After the close of UdeM and Urelift's evidence, the court granted judgment as a matter of law against UdeM and Urelift on the tortious interference claims.[26]

UdeM prevailed on its contract claim for liquidated damages based on breaches of the Sublicense Agreement.[27]  The jury found that UdeM proved that Uretek breached the Sublicense Agreement by: (1) engaging in the sale or application of services of utilizing the Uretek Processes/Uretek Products in the defined Territory; (2) engaging in any other enterprise that would tend to reduce the value of the Uretek Processes or the rights granted under the Sublicense Agreement; (3) selling, disseminating or causing to be disseminated the Uretek Processes/Uretek Products in the defined Territory and (4) violating the exclusive license granted by the Sublicense Agreement to provide and distribute services using the Uretek Processes/Uretek Products.  These four breaches were factually related.  The jury awarded UdeM $1.46 million dollars in liquidated damages based on those liability findings.[28]

In a post-trial memorandum, the court found that Urelift's jury award for lost profit damages was not supported by non-speculative evidence.  Therefore, attorney's fees attributable to

---

[26] See Min. Entry Ord. Dated Mar. 28, 2019.

[27] See Doc. 111-1, Jury Verdict p. 1.

[28] See id. p. 2

Urelift's claims for lost profit damages must be excluded from an attorney's fee award unless testimony concerning Urelift's claims also supported UdeM's successful claim.

Approximately half the trial time focused on Urelift's unsuccessful claim for lost profit damages but there was some factual overlap between Urelift's breach of contract claim and UdeM's breach of contract claim.  If only the liquidated damages claim had been tried, UdeM would have had to show only that Uretek breached the Sublicense Agreement by selling its products to SPI and that those products were sold into Mexico with the knowledge of Uretek.  Liquidated damages were calculated by multiplying those sales by fifty percent.  This is a far simpler case than the combined Urelift/UdeM case that was pleaded, winnowed by motion practice and eventually tried.

The court has reviewed the trial transcripts and estimates that the trial could have been shortened by at least fifty percent if only UdeM's claims had been tried because there would be no need to hear testimony about ALSO, the Metro Linea A project, other projects not awarded to Urelift or the fact that Urelift had to reduce its product charges because of marketplace demands.  The direct testimony of UdeM's expert comprised 45 lines of transcript, the gist being that he multiplied SPI's sales into Mexico by fifty percent as required by the Sublicense Agreement's liquidated

damages provision.[29]

This case was not efficiently tried by Plaintiffs' counsel. There were duplicative billings, wasted attorney and court time and significant time spent on unsuccessful claims. UdeM/Urelift made no attempt to segregate fees attributable to recoverable claims from those attributable to non-recoverable claims or to allocate fees attributable to successful claims from unsuccessful claims. Instead, UdeM offers a small reduction in fees in lieu of its obligation to segregate fees and its failure to allocate between successful and non-successful claims. This is inadequate.

In light of the significant number of unsuccessful claims that were culled out during the pretrial motion process, the time spent on discovery disputes caused by Plaintiffs and the significant amount of redundant or inefficient billings, the court finds that a sixty-percent reduction in the claimed fees is appropriate. UdeM is awarded $213,412 in attorney's fees.

UdeM has asked for anticipatory fees. The court may consider an award of attorney's fees after there has been a determination that it prevailed on the appeal of this order. The court reminds counsel that segregation of fees between Urelift's appeal and the appeal of this order is necessary.

**D. Recovery of Expert Fees**

Uretek objects to an award of expert fees based on the

---

[29]     See Doc. 116, Tr. Transcript Dated Apr. 6, 2019 pp. 79-81.

language in the Sublicense Agreement allowing "attorney's fees and expenses" to a prevailing party.   Uretek argues that the plain language of the contract should be read to mean that the word "attorney's" modifies both the words "fees" and "expenses," so that the contract provides recovery only for an attorney's expenses but not expert expenses.

The rules of contract interpretation require that the terms of an agreement are to be given their plain grammatical meanings unless the instrument indicates that the terms have been used in some other sense.  <u>Fed. Ins. Co. v. Srivastava</u>, 2 F.3d 98, 101 (5th Cir. 1993); <u>DeWitt Cty. Elec. Co-op., Inc. v. Parks</u>, 1 S.W.3d 96, 101 (Tex. 1999).

If the wording of a contract can be given a definite or certain legal meaning, it is unambiguous.  <u>Wal-Mart Stores, Inc. v. Sturges</u>, 52 S.W.3d 711, 728 (Tex. 2001); <u>DeWitt Cty. Elec. Co-op., Inc.</u>, 1 S.W.3d at 100.  In such a case, the meaning imparted by the language used in the contract must be decided as a matter of law.  <u>Gulf Ins. Co. v. Burns Motors, Inc.</u>, 22 S.W.3d 417, 423 (Tex. 2000); <u>DeWitt Cnty. Elec. Co-op., Inc.</u>, 1 S.W.3d at 100.

Here, the court interprets "attorney's fees and expenses" to mean those fees and expenses incurred by an attorney in pursuit of a legal claim arising out of the Sublicense Agreement.   The full text of the contract makes it clear that the fee and cost-shifting provision was intended to be read expansively because it allows

recovery for attorney's fees and expenses "including but not limited to court costs incurred in such action."[30]

Given this language, fees and expenses paid by an attorney to further the lawsuit, including those paid to an expert, are recoverable under the contract between the parties. However, the contract language limits recovery to those fees and expenses attributable to a prevailing party. Therefore, UdeM may only recover that portion of its expert expenses attributable to the claim on which it prevailed.

Plaintiff's expert, Blacker, charged $289,556 for expert testimony related to damages for Urelift and UdeM. As recounted above, most of Blacker's efforts concerned Urelift's claim for lost profit damages and another element of damages that was not permitted to go to the jury. Blacker briefly mentioned UdeM's contract claims when he summarized Urelift and UdeM's claims in a preliminary section of the report.[31] His actual analysis of the liquidated damages claim comprises a paragraph of the report:

> I have been asked to calculate the amount of liquidated contractual damages owed to UdeM based upon sales of materials in Mexico (or to entities who imported materials into Mexico) by Uretek and SPI relating to the Uretek Processes (e.g., polymer injection production systems, penetrometers, resin, gun clamps). Documentary evidence indicates that Uretek and SPI made sales totaling $2,936,413 to ALSO and Polilift. (Exhibit 9)

---

[30]   See Doc. 130-5, Ex. B to Pl.'s Mot. for Attorney's Fees, Sublicense Agreement p. 6.

[31]   See Doc. 59-1, Ex. A to Pls.' Resp. to Defs.' Mot. to Strike, Blacker's Expert Report.

Liquidated contractual damages calculated as 50% of $2,936,413 equals $1,468,207.

In a similar fashion, Blacker's testimony at trial merely explained how he multiplied SPI's sales into Mexico by fifty percent to determine UdeM's damages. It is doubtful that an expert was needed to perform this calculation, but the court will not second guess counsel's judgment on that point. Certainly, the majority of the work performed by Blacker was on the unsuccessful Urelift claims for which there can be no reimbursement. The court will reduce the expert fee by ninety-five percent. UdeM is awarded $14,477.80.[32]

## E.  Other Expenses

UdeM also claims copying, service-of-process charges, deposition and deposition-travel expenses, delivery charges and legal research charges in the amount of $3,514.61. Uretek complains that the backup invoices were not attached to the fee application. The expenses were described on the client invoices and verified by Plaintiff's counsel. This is adequate under the circumstances. However, the court does not consider lunches with the client or expert as falling within reasonable expenses taxed to the losing party. Therefore, the court will subtract $19.16,[33] and

---

[32]    At Blacker's hourly rate of $550 per hour, this award represents approximately twenty-six hours of his time, which the court deems ample for this arithmetical calculation. See Doc. 130-4, Ex. A-3 to UdeM's Mot. for Attorney's Fees, Blacker's Invoices p.2.

[33]    See Doc. 130-3, Ex. A-2 to UdeM's Mot. for Attorney's Fees Billing Records p. 72.

$49.67[34] from the total requested.  UdeM is awarded $3,445.33 in miscellaneous expenses.

UdeM also requests $19,757.50 in paralegal charges.  Fees for paralegal work are recoverable if the work performed is the type normally performed by an attorney, rather than the type normally performed by a clerk.  See Vela v. City of Houston, 276 F.3d 659, 681 (5th Cir. 2001); Moody v. EMC Servs., Inc., 828 S.W.2d 237, 248 (Tex. App.– Houston [14th Dist.]1992, writ denied).

In his declaration, UdeM's attorney states that the paralegal expenses are for "non-attorney work performed by Emily Landry and Sebastian Campos, paralegals with the McCathern law firm that performed non-attorney work related to this case."[35]  Villareal concedes that these expenses are not recoverable under Section 38.001(8) of the Texas Civil Practice and Remedies Code but contends that the parties contracted to pay for all attorney's fees and expenses.  Because work normally performed by a clerk is not billed to a client on an hourly basis but is subsumed within the attorney's billing rate, separate billing for clerk time is not a reasonable litigation expense.  UdeM's request for clerk/paralegal expenses is denied.

In conclusion, the court awards attorney's fees to UdeM in the amount of $213,412, expert fees in the amount of $14,477.80, and

---

[34]    See id. p. 81.

[35]    See Doc. 130-1, Ex. A to Pl.'s Mot. for Atty's Fees, Aff. of Isaac Villareal p. 8.

expenses in the amount of $3,445.33, for a total of $231,335.13.

**SIGNED** this <u>20th</u> day of June, 2020.

Nancy K. Johnson
United States Magistrate Judge